Case 24-3454, Nathan Roberts et al. v. Progressive Preferred Insurance Company et al. Argument not to exceed 15 minutes for the plaintiffs and 15 minutes to be shared by the defendants. Counsel, you may proceed for the appellants when ready. Thank you, Judge Mathis. May it please the court, Ben Flowers, for the appellants. I'll try to reserve three minutes for rebuttal. I'm happy to proceed today however the court would like, but my plan is to take under 90 seconds to explain why the district court erred in dismissing this case under Rule 12b-1, and then I'll just open it up to the court's questions. I'll begin with the fact that the defendants here offered a deal to businesses and their owners. The businesses and owners could purchase the right to compete for a $25,000 grant in exchange for giving the defendants a license to use their information for cross-selling and marketing purposes. That's alleged to Paragraph 21 of the amended complaint. And those allegations, which must be assumed true, establish a contract supported by mutual consideration. But Paragraphs 31 and 32 of the amended complaint allege that my clients were denied the ability to enter that contract based entirely on Mr. Roberts' race. Only companies that are majority black-owned were eligible to enter the application stage contract, and Mr. Roberts, who met... Where does it say that on the invitation to enter into the contract? Well, let me give you two answers to that. The first is that we allege that, so it has to be assumed true at Paragraph 32. But to more directly answer your question, Paragraph 19 of our complaint incorporates, by reference, the terms and conditions of the contract. And the terms and conditions of the contract are actually in the record at Document 35-1, which Hello Alice and Footnote 2 concedes you can consider. If you look at the eligibility requirements, it says, A, that only companies that are majority black-owned are eligible to, quote, participate in the program, end quote. The program being defined as the contest, not the ultimate grant. It further says that only owners... So you interpret that not to relate to what you describe as the second contract, but rather to also encompass the first contract? I believe it's defined to say that in the terms and conditions. The program is not simply the final award of the grant. And it can't mean that, by the way. I don't think even the defendants would want it to mean that. Because those terms and conditions give them all sorts of rights. They mandate arbitration. They have indemnity protections. They say how the contest will be run. And they get that license to use entrance information for marketing purposes. So if those terms and conditions do not apply upon the submission of an entry, then they're not getting any of those rights, and they're not permitted to assert them in lower courts, and they're not permitted to use them to use the information they're getting through the process. So what would happen if your client hit the submit button as it relates to the application stage contract? So I want to be clear. We're at the motion to dismiss stage. So we're just looking at the allegations. But we allege that the contract would not have been a valid contract. They're the offerors. The offerors determine the nature of the offer they make and what constitutes a valid acceptance. And those terms and conditions I referred to, but more importantly, our allegation at paragraph 32, is that it would not have been a valid acceptance. But I want to address a different, a related point. The defendants say that we weren't denied the contract because they say we could have just hit submit. Now, the most important point that's just positive here is we allege that that wouldn't have formed a contract. We couldn't enter into it. But let's assume Mr. Roberts could have formed some contract by hitting submit. It would not have, he still would have the same injury because while he'd be able to enter into some contract, he would not be able to get the benefits of the contract because the terms and conditions, as we allege, specifically say that only black-owned businesses are eligible to compete. So he couldn't have purchased that right to compete. He would have just been rejected out of hand. Beyond that, we further allege that the reason he did not hit... He would have been rejected. Are you referring to the grant stage? Like he obviously wouldn't have been able to get that grant. Yeah, so I'm proceeding in two steps. The first is we could not actually have accepted the offer. The second is even if he'd hit submit and even if that formed some sort of contract, he's still suffering the injury of not being able to purchase the benefits of the application stage contract. By the benefits, you mean the right to compete. Correct. So is there any difference between your adversaries saying, we accept your application and we're going to throw it away and saying we're not going to accept your application? Yeah, I think there is no... I want to clarify what I said before. It's the right to compete, but it's a contractual right to compete. So the injury is the denial of that contract. There is a difference there. Now, I want to go back to what I said initially, which is as a factual matter, the court must assume we could not have entered the contract. But put that aside. Assume we could have entered some contract by hitting submit. There is a difference because we could not have competed on equal footing. In the 11th Circuit, for example... I understand that, but at least when I was in law school, we talked about unilateral contracts. And to me, this smells like the same thing. If somebody says, swim the river and I'll pay you $100, and you swim the river and they don't pay you, that's a breach of the unilateral contract. Is that any different from it says, if you swim the river and you're white, we'll pay you $100? I think there could be conceivably two contracts in that situation. But I want to stress, we don't need to show that there are two contracts to win today. We need to show that at the application stage, there was a contract and we were denied the ability to enter into it. And our factual allegations in paragraph 32... And you're still not alleging at all anything about the grant stage. That is, if I said, you know, this is kind of silly, you know, that you didn't get the right to compete for the grant, I ought to rule for you at the grant stage, you're saying, no, we're not pushing that. Is that right? We concede that under Aiken, we can't prevail at the grant stage right now, but we did allege a violation at the grant stage. And that's if you read Aiken to mean that you have to actually prove you would get it, as opposed to when I read Aiken, it seems that, you know, Aiken lost because the defendants absolutely could show at the beginning that he couldn't have gotten in, that he couldn't, he was not in the zone of consideration. So you're willing to read Aiken as being so strong as that you have to show that you would have won even at the beginning? For the grant stage contract, we've conceded that that's how Aiken's been understood. That said, we do acknowledge that distinction exists, and if the court wants to draw it, that's fine. I can't stand up here and say that we've pressed that distinction because we have not. But so I think the key points are we allege we could not enter into the contract. Even if we could, it would be legally irrelevant because it wouldn't be the same contract. We wouldn't be getting the same benefits, which are a right to compete. So you add all that up and we have an injury in fact, a denial of the right to enter the contract. It's traceable to them because they made the terms and conditions. And then it's redressable with a damages award, if nothing else, with nominal damages, which we expressly seek at paragraph 51. I guess what confuses me is I'm trying to figure out whether you're advancing a two-contract theory or not. You seem to say both. Both in a sense. So we do advance a two-contract theory. My point is even if you were to conclude that that second contract isn't a contract, we still have standing to sue for the denial of the application stage contract. So what I have to convince you of today is that we allege facts to establish that there was an application stage contract. And we did because we... Going back to where Judge Mathis was a moment ago, you don't find it significant that your client didn't hit submit and didn't actually enter into or even apply for the first contract. No, there's no exhaustion requirement here. We have to allege an injury in fact and we do that when we say we couldn't have entered into it. And that would be a massive change in the law to hold otherwise. If that were true, then... I didn't say exhaustion. I didn't mean to imply exhaustion. But even requiring the submission... How is your client any different than any other citizen of the United States who reads this material coming out from Progressive? Because he would... They read it. They say, okay, that's interesting. There is this program. They do nothing. Right. How is that person different than your client? They would have to be able and ready to apply to say that they would have entered in. They have to be able to allege truthfully, plausibly, that they would have entered into the contract but for the racial restriction. We have alleged that over and over again in the complaint. But let's assume that we have a hypothetical person who didn't open it up and didn't then stop applying midway. They just opened... They saw it and they can make the allegation that they would have applied. Do they have standing? If they can say they would have applied, I think they would. Now, it's important... So there's no significance to you from your perspective that he got a part way through the application process and then on his own initiative quit. That doesn't matter. There's no significance to the extent there would be any would favor us because it proves that he really was able and ready to do this. He started to do it. Didn't the district judge in her ruling, there's a footnote about saying that there was no futility? That... No, to the contrary. The district court said it would have been futile. That's what I mean. Yes. You don't lose because you didn't hit submit.  Suppose an employer said... She, right up... Not right up front, right in the footnote, says you're not kicked out because you failed to push submit. Right. Let me give you a hypothetical. If a business were to say, we're hosting a raffle and the raffle is an award for $25,000. Anybody can enter. But if you're blocked, by the way, we're not going to... Then you're not going to ultimately collect the money. I mean, I think at that point, the person doesn't have to buy the raffle ticket to bring suit. They can say, I would have bought the raffle ticket. I would have denied that opportunity. And the denial, at least assuming it's a contract, so suppose you gave something up in exchange to buy the ticket, would be an injury. Now, the defendants make what I... In my last two minutes here before I started getting into my rebuttal, I'll go through what I think are their main counter arguments. One we've already addressed, which is they say, we could have just hit submit. As I said, that's factually incorrect under the facts alleged. That's just positive at this stage. It would also be legally irrelevant because even if he'd hit submit, the contract he would have obtained would not have been the same contract. He would not have purchased the ability to compete for the grant on equal terms. And you say that because they would not have in fact allowed you to compete. The terms and conditions did not allow competition, correct. I mean, why isn't that a breach of the unilateral contract? It wouldn't be a breach because the terms specifically say you can't compete. So they'd be adhering to the contract. And beyond that, even if he chose not to do it because of their terms, it's still fairly traceable to them. So that would be legally irrelevant. The other argument they make is this isn't a contract. I don't think that flies because there is consideration. We give a perpetual license to use our... The entrants give a perpetual license to use their information for marketing purposes. Beyond that, I should note you'd create a circuit split if you held otherwise. Fearless Fund, 11th Circuit case, 103 F. 4th, 765, held that a strikingly similar form to contract for the same reasons. I gather that you're saying that we don't have to buy your two-contract theory in order for you to be able to at least proceed beyond the motion to dismiss stage. That's correct. What you have to buy is our application stage contract theory. If that's a contract, we are standing to sue for the denial of the right to enter that contract. This is where I'm still confused. I asked you, do we have to buy your two-application theory, two-contract theory, and you say no. But then you say we do have to buy your theory that the application phase is a contract. Well, you have to buy our theory that the application stage contract is a contract. We additionally allege that there's a grant stage contract and would seek damages for that. But if you disagree with that today, as long as you find that we were denied the right to enter into an application stage contract, that's an injury in fact for which we can seek. In other words, we just don't get to the grant stage. Right, we're not pressing that here because of Aiken as we can see in that footnote. I see I'm eating into my rebuttal time, so I'll reserve that. Thank you. Thank you, Judge Mathis, and may it please the court. And I'll cut you off for hello, Alice, the defendant. The Supreme Court's repeatedly warned about cases that are conjectural or hypothetical, and that fits this case to a T. It comes to the court in a very different posture than in the district court. Plaintiffs have abandoned any claim for injunctive relief. They've waived any claim for damages based on the grant itself. Their sole argument now is that Interchange, Judge McKeague just indicated, was they have standing based on the supposed first of two contracts, which is really just the application for the grant. And they concede the first contract would have been completely formed, quote, at the moment they submitted their application. If this sounds formal and bizarre, it's because it is, and it runs smack dab. Counsel, let me ask you about that because I was going to. Your brief on this says exactly at page 17 what you just said. And it says the application stage was, the contract was formed at the moment the application was submitted, and then period, no ellipses. If I go to their reading, it says it is formed at the moment an application is submitted had the defendants not declared them ineligible on account of their race. So I put to you two things. Number one, isn't that different? And number two, doesn't your brief, you know, elide that by having no ellipses? I read it the same way that you just said it and I was impressed. And then I went to the brief and saw that they specifically said, except that they kept us out because of our race, which would mean no contract was formed. I think you have to read it, Your Honor, in light of what our brief is arguing there, which is Judge McKeague's first question, which is where in this first stage supposed contract is there any race-based exclusion? And he gave you two answers to that. One, he said, well, we allege it, so it must be true. That's obviously not true given Iqbal and Twombly. Iqbal says, quote, a pleading that offers labels and conclusions or a formulaic recitation of the elements will not do. You need further factual enhancement. It's got to be plausible. There's no indication whatsoever of this. Then he says, well, look at the terms and conditions. That is a new argument. It's not in the brief. And when you look at the terms and conditions, they don't say anything like that whatsoever. Rather, page 395, which has the entry in it, says, quote, by submitting an entry to the program, each entrant hereby grants sponsor in the progressive use of data and derivative works and the like. So that's about the entry. Well, but then the racial component is encompassed within the word program in the description of this offer. Yeah, and that's absolutely wrong. Page 398 distinguishes between the program and the terms and conditions. And Hello Alice knows exactly how to write something when they're having requirements for the entry. So for example, if you go on their website, it says, quote, the small business loan is open for businesses in the United States. Businesses in US territories are not eligible to apply. When it comes to eligibility for application, this is your first question. You're absolutely right. There is zero race-based exclusion in the terms and conditions or anywhere else that he wants to now point the court to, which, by the way, we're two years in. This is the first time he's ever pointed the court to the terms and conditions, and it doesn't make any sense because his whole theory is that Hello Alice is trying to grab as much data as possible. If that's so, why in the world would Hello Alice restrict the data retention program to a certain race? The whole idea is to have everyone come in. That's why, look, we agree, as this case comes to the court, there's a race-based exclusion on the second part, the $25,000 grant. But that's precisely what he's disclaiming here. All he's saying is he wants the right to apply for the grant, the grant that he concedes he can't get. And then your side is he is eligible to apply. It's just we're not going to consider it. And that might be a problem if he were alleging, Your Honor, like in his raffle ticket example, that there was a harm that he was losing out on the chance to get the underlying contract. But that's precisely, Your Honor, what he has waived here. In his brief, he says that he's, quote, waived any entitlement to relief with respect to the second contract. That's the opening brief at page 15, footnote 32. So as this case comes to the court, the only possible harm, he can say, is from not participating in the data retention program, which is not a cognizable injury. Assuming there is an injury, in fact, why isn't there a causal connection, again, if we're talking about the application stage? Because as he alleges it, and this is paragraph 28, he says, quote, eventually Plaintiff Roberts came to a part of the application that made clear the grants were available only to black-owned businesses. So he closed the application. He's the one. It's not traceable to the defendant's conduct. It's traceable to his own conduct in closing the application akin to this court's decision in Garland. In 1981, Runyon v. McCreary is the seminal case. I went back to the facts there, and Ms. McCreary never, in fact, did anything. She called up and said, oh, you've got a school, and they said we're not integrated, and she did nothing more. And yet nobody seemed to cavil at Ms. McCreary's not having standing there. And I think it was a very different world pre-Iqbal and Twombly, Your Honor. I'm sorry. It was a very different world pre-Iqbal and Twombly in which, you know, standing things weren't pushed and things like that. But let me give you, I think, this court's most recent precedent on it, which is Chief Judge Sutton's opinion for the court in Brindley, in which you had a blind plaintiff who said, look, I have an intention to access the credit union services. And this court said, looked beyond the record even to say, look, you wouldn't have been eligible for that. The last argument in our brief is, you know, we've given them time and chance again to allege they just met the race-neutral qualifications and criteria. They never did that. You know, it was the basis of our first motion to dismiss. They amended the complaint. They didn't add any factual allegations to this whatsoever. So it's very different than Judge Boggs, for example, your decision in the University of Michigan cases in which Barbara Grutter said, look, I was wait-listed. And admitted, as you said at page 87 of your opinion, the lawyer for Michigan even admitted, look, she would have gotten in but for race. This is the opposite. They've had time and chance again to say, we met all the extensive race-neutral criteria, like having a solid business plan, a clear plan for growth, all of this stuff, which is not a box-checking exercise, but serious conditions for the program. They've never met it. They never alleged that they've met it, and so plausibly alleged it. And Iqbal and Twombly say, if that's the case, then we're going to get into the world, as Judge McKeague, you said, what's the difference between you all and every other person in this country who could file a lawsuit and say, I'm offended by this race-based exclusion. The standing rules are done to prevent this. I'd also just say there's an easy way to deal with this case, and I understand it's a very complicated case, particularly given all their concessions about Aiken and injunctive factors and the like. The district court said they never developed their theory for why having two contracts would actually matter or having this application stage contract, as you just heard here, and you don't need the two contracts, which is, of course, different than what they said in their brief to this court. All of this is not developed. They had a whopping two sentences on this in the district court. It's now become the basis of a 30-page brief. I don't think it was abusive discretion for the district court to say, look, counsel, if you want to be developing these kinds of arguments, you've got to develop them in some detail. As my friend just said, in Fearless Fund, there's a long, extensive development of these kinds of questions, and here there's nothing like that, and I think it would be a very dangerous thing to have this court second-guess the district court's determination that this wasn't properly legally presented. Is there any real difference in the legal positions of you and your colleagues at the same table? I think there's not a difference except that we make an additional argument picking up on what Judge McKeague said. The last argument in our brief is they've got to allege plausibly that they met the race-neutral criteria, like clear business plan and the like, and because they didn't do that, the complaint fails on that basis alone. Whether there's two contracts, one contract, a unilateral contract, or a conditional grant, as we believe. We don't think there is a contract. I think these are just conditional grants. But none of that matters. It's a very simple, easy way to resolve this case, and as I said, they've had time and chance again to plausibly allege they met the race-neutral criteria. They've never been able to do it. They have a hortatory one sentence that just says, I met these allegations, and that is exactly what this court in Brintley said we would not credit because it will open the door. If they had met the race-neutral qualifications, they still would have had no guarantee that they would get one of these grants because there are many, many applicants. Yeah, and we are not saying, Judge Boggs, and this is I think something you asked my friend on the other side, we're not saying they have to show they would have gotten the grant, which arguably isn't what Aiken says, even though they're trying to concede that. If you don't say Aiken, it's – Not at all what we're saying. Exactly. We're not saying that. We're just saying they've got to allege plausibly that they were qualified to get the grant in the first place. Under your analysis of what would have happened, if they had pushed submit, what would have happened from – on the progressive side? Yeah, if they had submit, they'd be part of the – they'd submitted an entry to the program, and so they would get – so Hello Alice and Progressive would get the use of their data and marketing material. There's zero race-based exclusion entry. What would you have given up in return for their consideration, because you're not going to consider their application? Well, we've – giving them information about – when you sign up, you get educational information and programs and things like that. We provide – Hello Alice and Progressive provide information about how to operate a business and things like that. So they do get something as a result. And they have never plausibly alleged any reason whatsoever why Hello Alice or Progressive would want to limit that first stage on the basis of race. And if I could, Judge Boggs, I'd point you to page 5 of their brief. Here's what they say. Quote, Progressive announced that any applicant for these grants must be a for-profit business that is majority 51 percent black-owned, a clear business plan, et cetera. And as Judge McKeague, your first question indicated, there's only one problem with what they said at page 5. Progressive and Hello Alice never said that. They never said the applicant must be majority 51 percent black-owned. That's the criteria for the ultimate $25,000 grant, which is precisely what they are disclaiming before this court. They're only – That's the problem with the whole two-contract theory, where I press that because I'm trying to find out, are they really two standalone contracts? And I think the answer from your friend was, well, sort of yes and sort of no. They're related because somehow race is brought – is imputed into the first contract because even if they got the first contract, they couldn't have gotten the second contract. That's what I understood them to say. Yeah, and I mean that's their new theory. I don't think it makes any sense because as they are coming to the court, they're only alleging harm from the first contract. Footnote 32 disclaims any harm from not getting the ultimate grant. So it's like a – your Honor, let's say I see a sign that says black MDs. We're looking for a black MD. Only black MDs need to apply, doctors. If I see that, I can't sue saying I'm offended I'm not black because I'm not a doctor. I don't meet the criteria in the first place. So I couldn't get the ultimate job. Here, as this case comes to the court, they're conceding. They can't get the ultimate grant. So the only harm left, unlike their raffle example, is something about not entering the program itself. And as to that, as Judge Mathis, you said, they can hit submit. There is zero race-based problem with that. They enter the program that way. That's the way the program works. And your answer to my McCreery question is just that was pre-Iqbal. If Iqbal had been in place, Ms. McCreery would have been thrown out of court? I suspect they would have, or at least it would have impressed. And, you know, there could have been a factual debate about that and more evidence and the like. Like, for example, after Grutter and Gratz came the University of Texas Affirmative Action cases, Abigail Fisher and so on. Fisher, again, it's really illustrated. That's after Iqbal and Twombly. And there you see extensive factual allegations about her ability to get in. She's top 10%, 3.81 GPA, all sorts of stuff there that said, look, this person's qualified. And Judge Boggs, absolutely, we're not saying Abigail Fisher had to prove she'd get in. She just had to prove she met the entry criteria in order to have standing, which is not a tough barrier in most cases. I mean, some white applicants were in fact damaged, but the Aiken applicants were not even within the zone of consideration, and that was beyond debate, the court said. That's exactly right. And our concern is if you allow just the bare-bones allegation, we admit they allege that they're qualified. There's one sentence on this. But, you know, the Hello Alice has extensive criteria for participation in the program, the district court's opinion at page 3. And Iqbal and Twombly say you need, quote, some further factual enhancement, otherwise it's a step short of the line, between possibility and plausibility. That's at page 557. You would tell us that this case really turns on pleading sufficiency. Correct, correct. Start there and we end there. Yeah, and it's so telling that we said time and again, look, just allege plausibly that you met the criteria, that you had a clear plan for business growth. Explain what you mean by that. Give us some meat on the bones, because otherwise every person can say, hey, I met these criteria, I own a small business, maybe I own a car, therefore I can apply. No, that's not what the program is. The program requires more than that, just as it does to enter the University of Michigan or the University of Texas. Like merits, that is, there's a very recent case, and it just came out a week or two ago, but Stewart v. Martin, where they say that, well, just because you couldn't, your case is legally insufficient, that's a merits issue, not a standing issue. So saying that you wouldn't have given them the contract anyway because they're not black, that doesn't affect standing. So I'm not familiar quite with that case, but I would just say that I can't imagine that it conflicts with Chief Judge Sutton's opinion for the court in Brintley, which says very much the opposite. What it says is they're alleging that you have an intent to be part of a credit union, it's not enough. If you couldn't make it, even though you're so ideological and you're a tester and you're adversarial, you have concrete, not concrete, but you're ideologically adverse to the bank and discrimination, Judge Sutton says that's not enough. You have to plausibly allege you would have been a member of the credit union, that you would have gotten access to the services. And this court's opinion in Carroll v. Hill in 2022 says something similar. It says, quote, if a plaintiff lacks the ability to take advantage of an opportunity, the deprivation of that opportunity does not count as an injury in fact under Article 3. And that is exactly what they're doing here. They're saying, look. I think you've been in the red for a while, but we are here for your call. Thank you so much. Appreciate it. Thank you. Thank you, Your Honors. May it please the court. I'm Stephanie Schuster here for Progressive. Counsel just explained several reasons why the district court's decision that plaintiffs lack standing to seek damages is correct and should be affirmed. I'd like to briefly address just two of them further. First, this court's decision in Aiken is a complete answer to this appeal. Whether the grant program involves one contract, two contracts, or no contracts, plaintiffs allege at most a single injury, an inability to compete for the grant on equal footing. Under Aiken, that is not an injury and entitles a plaintiff to seek damages because the plaintiffs here do not allege that they would have won the grant had they applied. Second, even if they had alleged some injury distinctly flowing from the application, that injury can't be concrete or particularized here. Plaintiffs never submitted an application, and plaintiffs do not and could not plausibly allege any race-related impediment to doing so. Turning first to Aiken, plaintiffs insist that a lost opportunity to compete in the past on equal footing is sufficient to give them standing to seek damages. Aiken directly forecloses that argument. Under Aiken, the injury necessary to seek damages in cases like this is the lost opportunity to compete for a benefit the plaintiff would have won under a race-neutral theory. Plaintiffs do not attempt to make that allegation here. Plaintiffs characterize the grant application as a so-called competition contract in an effort to distinguish Aiken, but that distinction would nullify Aiken. But, I mean, if we're talking about an application-stage contract, I guess they would have won that contract if they would have applied. Is that right? Yeah. If they would have submitted the application, the application would have been submitted, and under their theory they would have won that contract. But the benefit at issue is the same. Even as they describe it, the application and the competition, application-stage contract or competition contract, the benefit at issue was ultimately to be considered for the grant, to compete on equal footing for the grant. That runs headlong into Aiken. But that's where, to get around Aiken, they say, we're not talking about that at this stage of the case. We're simply emphasizing that there was a benefit, regardless of whether they eventually could compete for the grant. There was a benefit. There was mutuality in terms of the application phase. Correct, but they argue that that formed a contract, and whether or not that's a plausible allegation or whether that constitutes a contract as a matter of law, what they're saying that the benefit of that contract that they lost was the inability to compete on equal footing. They state this at page 9 of their opening brief. The inability to compete on an equal basis inflicted both a past injury and a future injury that they allege in the complaint at paragraph 32. They seek to form a contract to compete for the grant. The grant and the application are inseparable, even under their theory of liability of two contracts. And it's telling that their theory for why they can get around and end run Aiken is exactly the same as their theory for why Aiken was wrongly decided. Their theory is that a past inability to compete on equal footing always should be an Article III injury to seek damages, and that's what they preserve in their footnote and that they preview that they'd like to challenge after the panel stage of this case. But applying Aiken, plaintiff's theory about the number of contracts can't materially change the fact that they allege just that one injury. To conclude otherwise would elevate form over substance and ignore their own descriptions of their injury. An inability to compete on equal footing, to be clear, can give a plaintiff standing to pursue injunctive relief, a theory they have disclaimed in this case. Turning next to the fact that if there is a separate injury flowing from the application, even if you assume that there's something distinct about the application than the inability to compete for the grant, that allegation here is not concrete or particularized, so it's not an Article III injury in fact. That is because nothing stopped plaintiffs from filling out the application and forming what they call the competition contract. Nothing stopped them from pressing submit. They rest their argument on an allegation in paragraph 32 of the complaint where they allege they were denied the ability to enter into a contract to compete because of Roberts' race. That is a conclusory allegation unadorned by any factual allegations such as how race played any role in the application distinct from the grant that courts ignore at the pleading stage under ICBAL. So does that mean if I understand both sides' argument about the first contract, your colleagues said, well, they give us their information, that's their consideration, and we try to sell them stuff. Is it your position that you would have, you, whoever you is here, would have in fact tried to sell them stuff, even though it said that they were not black? No, we don't take a position on that. We actually refute any contract. I'm sorry, what? No, we would not try to sell them stuff, but that's sort of beyond the allegations. So you would have pitched it away and not started sending them stuff? No, they would have been put into the hopper of applications considered for the ultimate grant. Then, again, as my colleague mentioned, nobody is disputing that there was a race-based eligibility criteria to the grant. I'm sorry, then I perhaps misheard you. I said the theory of the contract, I thought, from both sides, was the consideration is they give you information, you try to sell them stuff. I said, I asked you, what I was asking was, would you have tried to sell them stuff even though they weren't black? Let me, I just want to. When they looked at the application you sent in, would they have said, oh, we'll accept this contract even though they're not black, or would they have said, we're going to pitch it? Well, let me, just the premise of the question, Judge Boggs, what I'm pushing back on is that we do not agree that any actual contract was formed. Whether we would have sold them stuff or not, under their theory, the contract was formed at the moment of sale. Your position is you would have had no obligation to do anything. Correct. Correct, Your Honor. And they're not alleging a breach of contract claim here, largely because they've not formed what they are now calling a contract with this application. They didn't hit the submit button, and that's what keeps them one step removed from the injury that they're claiming and puts them more in the camp of a generalized grievance than an Article III concrete and particularized injury. But even if you consider their conclusory allegation at Paragraph 32 of the complaint and don't just disregard it as conclusory, it's still implausible because it conflicts with the actual factual allegations in the complaint. At Paragraphs 27 and 28, plaintiffs expressly allege that they opened the application, they began filling it out, and they only stopped applying when they learned that the grant was available only to black-owned small businesses, not that there was anything about the application that independently precluded them from applying that was race-based. Unless the Court has any further questions, we respectfully request that the decision be affirmed. Thank you. Thank you, Your Honors. In my remaining time, I want to make two sort of quick preliminary points, and then hit the major point, which is the pleading question Judge McKeague asked. First, the waiver argument is meritless. The district court never found that we waived. I just want to clarify. What's your theory at this stage? I mean, at some points we talk about two-contract theory. I hear we're really just talking about the application stage. What is the plaintiff's theory? We have alleged two contracts. On this appeal, the only contract at issue is the first one, the application stage contract. Now, they say we never advanced this two-stage, this two-contract theory below, and the district court found it waived. That's meritless. Look at footnote four. The district court does not say we waived the argument. It says we failed to give a legitimate reason why it mattered. She just rejected the argument on the merits. It had nothing to do with waiver. Second, Progressive says that we have just alleged denial of opportunity to compete. No, we have alleged the loss of a contract for the right to compete, and the loss of a contract is always an injury in fact. And then I want to turn to Judge McKeague's question. Isn't this just about pleading? They're trying to make Twombly and Iqbal into something it's not. Neither of those cases requires detailed factual allegations, requires plausible allegations. The key questions here are whether we have an injury in fact and whether really just injury in fact. So let me explain why the allegations were plausible. First, they say we could have entered into the application stage contract. They keep saying that. They cannot say that at this stage. We're at the motion to dismiss stage, and you must assume the truth of the facts we allege. We allege that we could not have entered into the contract, paragraph 32. That's plausible in and of itself, but if you want more, look at the grant terms. You can find this at page ID 393. That's document 35-1 that I addressed earlier. It says to be eligible to enter a business in the program, you, the officer, must be all of the following, and one of those is an entrepreneur who's the leading executive of a business that meets the below business criteria. What are those criteria? To be eligible to participate in the program, the business must meet all of the following, including be a small business that is majority owned and operated by Hispanic individual. I think the thing that attaches actually for a different program, but it's the same terms that apply to this one, and they're incorporated by reference at paragraph 19 of the complaint. You and I talked about that earlier. Right. The question was whether program encompasses your two-contract theory, and your friend on the other side's answer to that same question when we talked about it during his time was that the terms program don't include this application phase. So how do we answer that? That cannot be because if that were true, they would acquire none of the rights against anyone who didn't win a grant that are stated in this contract. The contract says anyone who even enters an application gives them a perpetual license to use their information, binds them to arbitration. I don't understand why they're inconsistent because their position is that race doesn't have anything to do with the first contract. You could have applied for and you could have received the first contract. So we allege we couldn't have applied for it. That's paragraph 32. The court has to assume that's true. It's plausible in light of the language I just read. It says to be eligible to participate in the program. Why do we assume that that's true in a situation like this overlaid by Iqbal Twombly when if we look at the source of that, which apparently is the term of this program, if we don't read it the way you read it, why do you win? Don't read the program language? The terms and conditions. The terms and conditions. Terms and conditions are incorporated. Hello, Alice concedes you can look at them. So you can take a look. I don't think there's any argument that it doesn't apply at the application stage. If there's only one contract in this case, it's the application stage contract. Anyone who enters this contract is bound, and if the court says otherwise, it creates a circuit split with fearless fund. Can I make one additional point? They say that we fail to plausibly allege we can meet the nonracial criteria. That's also false. Paragraphs 18 and 19 identify one by one all of the criteria. Paragraph 31 expressly states that we satisfy them. That's plausible on its own. But if you need more, Exhibit 8 to the complaint is a declaration signed under penalty of perjury by Mr. Roberts in which he again identifies the conditions and again states he can satisfy all of them except for the nonracial criteria. That's enough not only to satisfy Rule 8. That evidence, if unrebutted, will permit a jury to find in our favor. So it surely satisfies the short and plain statement of fact requirement of Rule 8. I know I'm over my time, so I'm happy to take questions. Otherwise, we ask that you reverse. Thank you, Counsel. Thank you. All right. Your case will be submitted.